IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61351-CIV-MOORE/WHITE

JONATHAN EUGENE HUGHES,

    Plaintiff,
vs.

SHERIFF AL LAMBERTI et al.,

    Defendants.
_____/

## ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (ECF No. 25). These matters were automatically referred to the Honorable Patrick A. White, United States Magistrate Judge, at the commencement of the action when Plaintiff Jonathan Hughes ("Hughes") filed his Complaint (ECF No. 1) and Amended Complaint (ECF No. 11) alleging a violation of his civil rights under 42 U.S.C. § 1983. Magistrate Judge White issued a Report (ECF No. 31) recommending that the Motion (ECF No. 25) be granted in part. Defendant Deputy Sheriff John Doe ("Deputy Doe") filed Objections to the Report (ECF No. 32). Plaintiff filed Objections to the Report (ECF No. 38). Deputy Doe filed a Response to Plaintiff's Objections to the Report (ECF No. 39). Defendant Deputy Sheriff Caleb Ballinger ("Deputy Ballinger"), Deputy Lacerra, and Deputy Doe filed a Response to Plaintiff's Objection to the Report (ECF No. 40). Plaintiff filed an Objection to Defendant's Request to File a Reply (ECF No. 41).

After a de novo review of the Motion, the Report, Plaintiff's and Defendants' Objections, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court

enters the following Order.

As an initial matter, this Court does not adopt Magistrate Judge White's Report and Recommendation in full pertaining to the first incident set forth in the Report's "Facts of the Complaint" section. The Amended Complaint describes two incidents that occurred one hour apart on June 4, 2008. With regard to the first incident, the Amended Complaint describes the events as follows. At around 9:30AM, Deputy Lacerra pulled up to Hughes and another person who were standing on a sidewalk. Deputy Lacerra asked what they were doing. Hughes responded that they were talking about who lived in the area and passing out flyers for a family business. Deputy Lacerra asked to search Hughes and he refused. Deputy Lacerra allegedly said that he would take Hughes to jail if he did not allow the search. Deputy Lacerra then searched Hughes and recovered his wallet. During this search, Hughes refused to be searched and attempted to leave, but Deputy Lacerra said that Hughes had to stay until Deputy Lacerra was done with him.

After the initial search of Hughes, Deputy Lacerra called for backup. Deputy Ballinger and Deputy Doe arrived at the location. Hughes then attempted to leave, and Deputy Ballinger told Hughes to stay. Deputy Ballinger then spoke with dispatch who informed him that Hughes was on probation. Deputy Ballinger told Hughes that it was policy of the Broward Sheriff's Office that they could search and seize Hughes anytime because he was on probation. Hughes then attempted to leave again. Deputy Ballinger told Hughes if he tried to leave another time that Deputy Ballinger would take him to jail.[1] Deputy Ballinger and Deputy Doe then searched

---

[1] The Report stated that "Ballinger ordered him to remain and threatened to arrest him if he tried to leave again. Upon contacting dispatch," Ballinger learned of Hughes' probation status. The sequence of events in the Amended Complaint is reversed. It was allegedly after

2

Hughes' pockets, shoes, and socks. The Court does not adopt the Report's finding that "Hughes expressly refused to consent to the search" of his pockets, shoes, and socks. (ECF No. 31, p. 4). In the Amended Complaint, Hughes states that he told Deputy Ballinger and Deputy Doe that "this was a consensual encounter and I did not have to let them search me." (ECF No. 11, p. 5).

The Report's recitation of the facts are otherwise adopted as to the second incident.

As the Report provides, Hughes asserts four causes of action. They are (1) excessive use of force against Deputies Lacerra, Ballinger, and Doe, (2) failure to intervene against Deputies Lacerra and Doe, (3) unlawful search and seizure against Deputies Lacerra, Ballinger, and Doe, and (4) false arrest against Deputy Ballinger.

This Court adopts the Report as to Claims I and II, and they are dismissed. Although this Court agrees with the Report's conclusion in Claim III, it does not adopt parts of the Magistrate Judge's findings. In Claim III, Hughes brings an action against Deputy Lacerra, Deputy Ballinger, and Deputy Doe individually for unlawful search and seizure. These claims refer to Deputy Lacerra searching Hughes initially and recovering his wallet, and Deputy Ballinger and Deputy Doe searching Hughes' pockets, shoes, and socks after determining he was on probation. Under Claim III, the Report misstates that Deputy Ballinger searched Hughes person "notwithstanding Hughes' refusal to consent." (ECF No. 31, p. 10). As stated above, the Amended Complaint does not state that Hughes expressly refused the search conducted by Deputy Ballinger and Deputy Doe. Rather, Hughes considered it a "consensual encounter," stating that "I did not have to let them search me." (ECF No.11, p. 5).

---

Deputy Ballinger heard that Hughes was on probation that he "threatened to arrest him if he tried to leave again." (ECF No. 11, p. 4-5).

3

Moreover, the Report explains that "the defendants did not know the plaintiff was on probation until they searched him and found his wallet, despite his refusal to a search after twice being asked by the deputy." (ECF No. 31, p. 10). This statement needs clarification. There were two searches in the first incident. The first search was by only one defendant, not "they." Deputy Lacerra conducted the first search and recovered Hughes' wallet. During that search, Deputy Lacerra purportedly did not know that Hughes was on probation. However, during the second search of Hughes conducted by Deputy Ballinger and Deputy Doe, they had knowledge that Hughes was on probation. Thus, there is an issue as to whether Deputy Ballinger and Deputy Doe could lawfully conduct a search of Hughes because he was on probation. The Report does not address this issue.

In U.S. v. Knights, the Supreme Court discussed the Fourth Amendment rights of probationers. 534 U.S. 112 (2001). The Court stated, a person's "reasonable expectation of privacy [is] significantly diminished" when they are on probation. Id. at 113. The Court continued:

> In assessing the governmental interest, it must be remembered that the very assumption of probation is that the probationer is more likely than others to violate the law. [citation omitted]. The State's interest in apprehending criminal law violators, thereby protecting potential victims, may justifiably focus on probationers in a way that it does not on the ordinary citizen. On balance, no more than reasonable suspicion was required . . . .

Id.

In Knights, the Supreme Court found that only reasonable suspicion was needed to search a probationer's home when they consented to such probationary terms. 534 U.S. at 113. The Court then addressed the issue of suspicionless searches of parolees in Samson v. California, 547 U.S. 843 (2006). There, the Court upheld a California law that required parolees to agree in

writing to a search or seizure at anytime with or without cause. Id. In doing so, the Court found that parolees had even fewer rights than probationers and permitted suspicionless searches of parolees. Id. However, the Court did not address the issue of whether "a search solely predicated upon the probation condition" is constitutional. Samson, 547 U.S. at 845. The Eleventh Circuit has held that "[w]hen a probationer has a condition of probation reducing his expectation of privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history, a search can be permissible when supported by reasonable suspicion." U.S. v. Carter, 566 F.3d 970, 975 (11th Cir. 2009); see U.S. v. Yuknavich, 419 F.3d 1302 (11th Cir. 2005).

Even if only reasonable suspicion is required to search and seize a probationer, the Report correctly finds that there is no evidence in the record to support reasonable suspicion prior to the initial search. In addition, Deputy Ballinger and Deputy Doe also did not have reasonable suspicion to search Hughes' pockets, shoes, or socks. Hence, pursuant to the Amended Complaint, Defendants conducted a suspicionless search of Hughes.

Defendants argue that Hughes consented to the second search, and therefore reasonable suspicion or probable cause was unnecessary to conduct a search. It is unclear whether Hughes consented to the second search by Deputy Ballinger and Deputy Doe. Hughes description of a "consensual encounter" conflicts with his previous actions where he refused to be searched earlier, attempted to leave several times, and was told that he would be taken to jail if he attempted to leave. The scope of any consent and whether consent was actually given cannot be determined at this stage.

Since there is no finding as to whether Hughes consented to the second search, there is a further issue of whether a suspicionless search of a probationer is lawful when the probationary terms permit a search of the probationer with or without cause. However, the Court will not address that issue at this time because Hughes' probation order has not been submitted by either party. The statements in the record do not provide the actual terms of Hughes' probation, and this Court declines to speculate. See Pl.'s Am. Compl. (ECF, No. 11, p. 5) (stating that Deputy Ballinger said "that he could search and seize me at any time because I was on probation. Even though it was part of Plaintiff's Probation order. Or the Court's order."). Without a probation order, allowing for searches without cause, reasonable suspicion would be necessary to search a probationer such as Hughes. See Carter, 566 F.3d at 975. Accordingly, Claim III against Deputy Lacerra, Deputy Ballinger, and Deputy Doe will not be dismissed at this time.

With regard to Claim IV, this Court agrees with the Report's conclusion that the claim against Deputy Ballinger for false arrest should be dismissed. However, this Court does not agree with all aspects of the Report's analysis. The following statements are not adopted:

> It was initially found that the facts contained in the amended complaint do not establish probable cause to arrest Hughes for either crime. However, closer review of the facts reveal that there was arguable probable cause to arrest the plaintiff at the second incident. At the second incident, it had become known that the plaintiff was on probationary status. The deputy therefore had the authority to stop him at this time.

(ECF No. 31, p.12).

This Court declines to analyze whether Deputy Ballinger could "stop" Hughes because he was on probationary status. See Carter, 566 F.3d at 973 (explaining the balancing test to determine whether search of a probationer's home was lawful). The issue is not whether Deputy

6

Ballinger could "stop" Hughes, but whether there was arguable probable cause for the arrest. Indeed, there was arguable probable cause for the arrest stemming from Hughes passing out flyers in violation of the school safety zone. Fla. Stat. § 810.0975. Moreover, this is the same area (another part of the same neighborhood) that Hughes was told not to return to by the police during the first incident. After violating the school safety zone, Deputy Ballinger told Hughes to stop, and Hughes attempted to flee the area by riding his bike away. He then "jumped a fence" to escape Deputy Ballinger. As the Report points out, Hughes even admits that he "[p]lead out these charges at his violation of probation hearing." (ECF No. 11, p.3). As such, there was arguable probable cause or probable cause to arrest Hughes during the second incident, and Deputy Ballinger is entitled to qualified immunity as to claim IV. Accordingly, this claim is dismissed.

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Motion to Dismiss (ECF No. 25) is GRANTED IN PART AND DENIED IN PART. Claim I for use of excessive force against Deputies Lacerra, Ballinger, and Doe is DISMISSED. Claim II for failure to intervene against Deputies Lacerra and Doe is DISMISSED. Claim III for unlawful search and seizure against Deputies Lacerra, Ballinger, and Doe is NOT DISMISSED. Claim IV for false arrest against Deputy Ballinger is DISMISSED.

ORDERED AND ADJUDGED that Judge White's Report and Recommendation (ECF No. 31) is ADOPTED IN PART.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of February, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: Counsel of record